IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN D. CARSON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 4:17-CV-00237-RSB-CLR |
| v. | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**COMES NOW,** Plaintiff in the above-styled matter, and files this Response to Defendant's Motion for Judgment on the Pleadings, showing the Court as follows:

### FACTS

On or about December 5, 2017, Plaintiff filed his Complaint against Defendant Monsanto, the manufacturer of Roundup® Weed Killer. <u>See</u> Complaint, generally. About thirty (30) years ago, Plaintiff began routinely applying Roundup® on his lawn. <u>Id</u>., para. 60. Following his use of Roundup®, he was diagnosed with malignant fibrous histiocytoma (MFH). <u>Id</u>., para 61. Plaintiff's Complaint alleges: 1) strict liability for defective design, 2) strict

1

liability for failure to warn, 3) negligence and 4) breach of implied warranties.  Id., generally.

## HISTORY OF GLYPHOSATE AND ROUNDUP®

Roundup® contains the chemical glyphosate which is a broad spectrum, non-selective herbicide used to kill plants considered to be weeds by translocating the system herbicide to their roots, etc. where it interferes with the plant's ability to form aromatic amino acids necessary for protein synthesis.  Id., para. 11.  These treated plants generally die within two to three days of treatment; however, because it is absorbed into the plant, glyphosate cannot be completely removed by washing or peeling produce or by milling, baking or brewing grains.  Id.  Within the last decade, health organizations have determined that glyphosate is a probable cause of cancer.  Id., para. 12.

Even though reports have surfaced exposing the dangers of Roundup®, Defendant has continued to market this product as safe for use without causing harm to people or the environment.  Id.  Even further to that effect, Defendant has championed falsified data and attacked legitimate studies that revealed its dangers. Id.  As such, reports and tests conducted by the Environmental Protection Agency (EPA) that indicate glyphosate is safe are misleading; the process was corrupted by the fact that several of the studies were conducted or sponsored by Defendant

itself.[1]   Likewise, a 2015 EPA report by the Cancer Assessment Review Committee (CARC) which maintained that glyphosate is not likely to be carcinogenic to humans, admitted that most of the studies were "underpowered, suffered from a small sampling of cancer cases with glyphosate exposes, and had risk/odds ratios with large confidence intervals.  Additionally, some of the studies had biases associated with recall and missing data.[2]  It goes without saying that EPA's actions have raised some suspicions.

The World Health Organization (WHO), which is a governmental entity and a specialized agency of the United Nations, believes that glyphosate is making people sick.  The research arm of the WHO, the International Agency for Research on Cancer (IARC) determined that glyphosate is probably carcinogenic to humans based upon limited evidence of cancer in humans and sufficient evidence of cancer in experimental animals.[3]

The manufacture, formulation and distribution of Roundup® is regulated under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §136 *et seq.*  Complaint, para. 14.  Because the FIFRA requires that all pesticides be registered with the EPA, as part of the registration process the EPA requires testing to evaluate the potential for exposure, toxicity to humans and other adverse

---

[1] Robinson, Claire, Michael Antoniou and John Fagan.  GMO Myths and Truths: A Citizen's Guide to the Evidence on the Safety and Efficacy of Genetically Modified Crops, 3rd Edition.  N.p.: Chelsea Green, 2015.
[2] U.S.E.P.A. Memorandum dated October 1, 2015.  See Exhibit A attached hereto.
[3] www.iarc.fr//featured-news.media-centre-iarc-news-glyphosate.  See Exhibit B attached hereto.

effects. Id., para. 15. This registration by the EPA is not an assurance of safety. Id. Both the EPA and the State of the Georgia registered Roundup® for distribution, sale and manufacture in the United States and Georgia, respectively. Id., para. 17. Currently, the EPA is re-evaluating all pesticide products through a Congressionally-mandated process called re-registration wherein the EPA has demanded the completion of additional tests and the submission of data for review and evaluation. 7 U.S.C. §136a-1; Id., para. 19.

Plaintiff's Complaint more specifically identifies the instances of fraud by Defendant with respect to its product testing and the varied history of reports, which are not at all in line with what Defendant would have this Court believe. Internationally, a majority of countries are taking proper action and banning the use of glyphosate. Complaint, paras. 54-59.

## LEGAL STANDARD

Defendant now files a Motion for Judgment on the Pleadings pursuant to F.R.C.P. 12(c) nearly two years after Plaintiff filed his Complaint. However, judgment on the pleadings is only appropriate where there are no material facts in dispute thereby making the moving party entitled to judgment as a matter of law. Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). In determining whether a party is entitled to judgment on the pleadings, the court accepts as true all material facts alleged in the non-moving party's pleading, and we view those

4

facts in the light most favorable to the non-moving party.   Id.   If competing pleadings reveal a material dispute of fact, judgment on the pleadings must be denied.   Id.   Only pleadings may be considered, i.e. complaint, answer, answer to counterclaim, answer to crosuclaim, third party complaint, answer to third party complaint and reply to an answer.   Id. at 1336, citing Fed.R.Civ.P. 7(a).   A court may not consider matters outside of these pleadings without converting the motion into one for summary judgment.   Equal Employment Opportunity Commission v. Austal USA, LLC, 389 F.Supp.3d 1015.

Defendant's Motion for Judgment on the Pleadings should be denied as there are material facts in dispute.   Also, it should be denied because if the Court believes all of the facts in Plaintiff's Complaint as true, viewed in the light most favorable to Plaintiff, Defendant has not met its burden to prove its motion.

Moreover, Defendant is requesting that the Court consider information from its motion that is not contained within the pleadings and therefore incapable of being considered.   Lastly, Defendant's motion was filed untimely as it waited nearly (2) years after the Complaint was filed.

## ARGUMENT AND CITATION OF LAW

Defendant's motion alleges that 1) Plaintiff's claims are preempted by FIFRA and 2) Plaintiff's claims are barred by the impossibility preemption.   Both of these arguments are invalid.

I.      Plaintiff's claims are not preempted by FIFRA.

FIFRA regulates the use, sale and distribution of pesticides, requiring that they must be registered in order to prevent unreasonable adverse effects. 7 U.S.C.A. §136a. Pursuant to §136v, a State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter. §136v(b) states that "such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

A.      Bates v. Dow Agrosciences, LLC

A two part test for determining whether a state law claim is preempted was developed by the Court in Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 444 (2005): 1) it must be a *"requirement for labeling or packaging"* and 2) it must impose a labeling or packaging requirement that is *"in addition to or different"* from those required under this subchapter. Notably, the Court specifically mentioned that §136v(b) only applies to *requirements*, mere suggestions to motivate an optional decision does not qualify as a requirement. Id. Most importantly, however, with respect to the first part of the test created in the ruling, the Court specifically states "rules governing the design of a product, for example, are not pre-empted." Id.

6

The specific facts of <u>Dow</u> were that a herbicide manufacturer sought a declaratory judgment action against peanut farmers whom were threatening to sue it for crop damages allegedly caused by its herbicide. <u>Id</u>. at 431. Those farmers counterclaimed for breach of express warranty, fraud, violation of Texas Deceptive Trade Practices Act, strict liability, negligent testing and negligent failure to warn. <u>Id</u>. It was abundantly clear to the Supreme Court that many of the common-law rules upon which the farmers relied did not satisfy the first condition of their preemption test. <u>Id</u>. at 444. Rules that require manufactures to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do NOT qualify as requirements for "labeling or packaging." <u>Id</u>. None of these common-law rules requires that manufacturers label or package their products in any particular way and therefore the farmers' claims for defective design, defective manufacture, negligent testing and breach of express warranty are NOT pre-empted. <u>Id</u>. The Court did not find preemption of the farmers' claims for fraud and failure to warn, but instead, remanded them to the court of appeals because a question of Texas law was involved. <u>Id</u>. at 453.

<u>Bates</u> went on to clarify that a state-law labeling requirement is not preempted by §136v(b) if it is equivalent to, and fully consistent with, FIFRA's

misbranding provisions. Id. at 447. The Supreme Court held that, in this context, they nevertheless have a duty to accept the reading that disfavors preemption. Id. at 449, citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), because the states are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly preempt state law causes of action. "The long history of tort litigation against manufactures of poisonous substances adds force to the basic presumption against preemption. If Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly." Id. at 450, citing Silkwood v. Kerr-McGee Corp., 464 U.S. 238 (1984). Because of the long history of emphasizing the importance of providing an incentive to manufacturers to use the utmost care in the business of distributing inherently dangerous items, it seems unlikely that Congress considered a relatively obscure provision like §136v(b) to give pesticide manufacturers virtual immunity from certain forms of tort liability. Id. Under the Court's interpretation, §136v(b) retains a narrow role. Id. at 452.

B.    Additional District Court Rulings Within Eleventh Circuit

The majority of district courts within the Eleventh Circuit follow the ruling set forth in Bates:

1.      Gougler v. Sirius Products, Inc., 370 F.Supp.2d 1185 (M.D. Ala. 2005).

The Gougler Court examines a multitude of different jurisdictional FIFRA rulings in reaching its holding.

> "Notwithstanding its express preemption provision, FIFRA does not preempt all state law claims. To be sure, it has been held to preempt state law claims that are "*premised* on inadequate labeling or a failure to warn." *National Bank of Commerce of El Dorado, Arkansas v. Dow Chemical Co.,* 165 F.3d 602, 608 (8th Cir.1999) (citing authorities for proposition that FIFRA preempts only state law tort claims *based* on failure to warn); *see also Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.1993) (explaining that FIFRA preempts state law claims only "[t]o the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements"); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 747 (4th Cir.1993) (FIFRA preemption applies to any state law claim "that rests on an alleged failure to warn or communicate information about a product through its labeling"); *Jack v. Orkin Exterminating Co.,* 2001 WL 25641, *2 (E.D.N.Y. Jan.5, 2001) ("[W]here a cause of action requires proof that a product's packaging and labeling should have included additional, different or more clearly stated warnings than those required by FIFRA, it is preempted by FIFRA provisions."); *Helms v. Sporicidin Int'l,* 871 F.Supp. 837, 842 (E.D.N.C.1994) (explaining that FIFRA preempts only state law claims that rest on failure to warn or improper labeling theories); *Herr v. Carolina Log Bldgs., Inc.,* 771 F.Supp. 958, 961 (S.D.Ind.1989) ("under FIFRA, the jury may not determine that a deficiency in the label, in and of itself, requires a finding of liability for the plaintiffs' damages"). By contrast, claims that do not challenge product labels or warnings are not preempted. *See Johnson v. Monsanto Chemical Co.,* 129 F.Supp.2d 189, 196 (N.D.N.Y.2001) (strict liability claims based on design defect, not improper labeling, are not preempted because they do not "require a finding that Defendants' labeling or warnings were deficient"); *Burt v. Fumigation Service and Supply, Inc.,* 926 F.Supp. 624, 630

9

(W.D.Mich.1996) ("But claims unrelated to labelling, such as those founded on the testing, manufacturing or formulating of the pesticide, are not pre-empted."); *Higgins,* 862 F.Supp. at 757 ("claims that do not challenge the labeling of the defendant's product are not preempted"). Simply put, "[i]f a plaintiff can establish a violation of FIFRA which is not predicated on failure to warn or inadequate labeling that claim is actionable." *Id.* at 758."

Thus, held <u>Gougler</u>, in the FIFRA context, federal courts routinely distinguish between state-law claims based on failure to warn (which are preempted) and those based on design defects or manufacturing flaws (which are not). See <u>Papas</u>, 985 F.2d at 520. In creating this dichotomy, courts have declared that "defectively manufactured or designed products properly labeled under FIFRA may still be subject to state regulation," and that claims based on inadequate manufacturing or inappropriate design are therefore not preempted. <u>Id</u>. citing <u>Fisher v. Chevron Chemical Co.</u>, 716 F.Supp. 1283, 1289 (W.D.Mo.1989) (strict liability claims that herbicide spray was unreasonably dangerous when put to its reasonably anticipated use were not preempted by FIFRA.

2.   <u>Hughes v. Southern States Co-Op, Inc.</u>, 180 F. Supp. 2d 1295 (M.D. Ala.2001).

The Court in <u>Hughes</u> reviewed the history and intent behind FIFRA in order to reach its ruling.

"Determining the scope of a statutory provision's preemptive effect is guided by two considerations. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The first is

rooted in concerns of federalism. Even in statutes like FIFRA where a domain is expressly preempted, the Supreme Court has held that this domain should be construed narrowly in light of a "presumption against the pre-emption of state police power regulations." *Id.* (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). The second concern is legislative intent. While the preemption statute should be construed narrowly, foremost in the analysis should be "the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 486, 116 S.Ct. 2240. This understanding, in turn, is driven by the language and overall framework of the statute, as well as the legislative history. *Cipollone,* 505 U.S. at 517–23, 112 S.Ct. 2608.

FIFRA, originally enacted in 1947, was completely revised in 1972. The purposes identified on the bill at this time were to "(A) regulate the use of pesticides to protect man and his environment; and (B) extend Federal pesticide regulation to actions entirely within a single State." S.Rep. No. 92–838, at 1 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 3993. These purposes suggest both horizontal and vertical aspects of FIFRA's preemptive domain. As to the vertical aspect, the 1972 revision expanded a statutory domain which had previously been confined to interstate activities to now encompass even intrastate pesticide usage. *Id.* at 3998. Whatever the breadth of the preemptive domain, its depth was clear: states were now precluded from "impos[ing] or continu[ing] in effect *any* requirement for labeling or packaging." 7 U.S.C. § 136v(b) (emphasis added).

The horizontal aspect, or the breadth of the "labeling or packaging" language, is given shape by the stated purpose of the statute, namely the "protection against any unreasonable adverse effects on the environment." *Id.* at § 136(x). In other words, Congress intended to provide uniform standards so as to avoid "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." *Id.* at § 136(bb). In light of these considerations, the EPA is to make a determination as to whether a particular pesticide should be registered, and, if so, under what circumstances. *See* 1972 U.S.C.C.A.N. at 3996–97. The factors considered in this regard include whether it performs in accordance with the claims stated on the label, whether the label complies with the overall regulatory requirements, and whether the intended performance, in widespread usage, will adversely affect the

environment. 7 U.S.C. § 136a(c)(5)."

C.    Application to Plaintiff's Claims

In review, Plaintiff's Complaint alleges claims for: 1) strict liability for defective design, 2) strict liability for failure to warn, 3) negligence and 4) breach of implied warranties.

1.    Strict Liability for Defective Design

Defendant argues, albeit inaccurately, that Plaintiff's claim for strict liability for defective design is somehow veiled as a claim for labeling.  A cursory review of Plaintiff's Complaint clearly shows that this simply isn't the case.  Plaintiff's allegation of liability rests upon the product's defective design and formulation when it left the hands of Defendant's manufacturers and therefore being unreasonably dangerous.  Complaint, paras. 64-80.

It is abundantly evident that a claim for defective design fails the two-part test developed in Dow: 1) this claim is not based upon a *"requirement for labeling or packaging"* and 2) it doesn't attempt to impose a labeling or packaging requirement that is *"in addition to or different"* from those required under this subchapter.  Plaintiff's claim does not require the Court to evaluate, question or review Defendant's labeling in any manner whatsoever.

Recall that Dow, along with the myriad of other cases cited above, held "[r]ules that require manufactures to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of

12

Case 4:17-cv-00237-RSB-CLR   Document 42   Filed 02/14/20   Page 13 of 17

manufacturing defects, and to honor their express warranties or other contractual commitments plainly do NOT qualify as requirements for "labeling or packaging" and are therefore NOT preempted by FIFRA. <u>Bates</u> at 444. As such, Defendant's Motion should be denied.

2.      <u>Strict Liability for Failure to Warn.</u>

Likewise, the <u>Dow</u> Court did not find preemption of the claims for failure to warn, but instead, remanded them to the court of appeals because a question of Texas law was involved. <u>Id.</u> at 453.

In this instance, The Court must make a determination whether Georgia state law on failure to warn is "in addition to or different" from those required from FIFRA. Defendant neither cites to the relevant Georgia state law (O.C.G.A. §2-7-53, *et seq*), nor compares/contrasts Georgia law with FIFRA, but instead blindly argues that it is preempted. Plaintiff asserts that pertinent state law is equivalent to that of FIFRA, without requiring anything additional or different.

As this involves a disputed material fact, and requires the Court's determination as to the law, this question is not appropriate for a judgment on the pleadings.

3.      <u>Negligence and Breach of Implied Warranty</u>

Again, the <u>Dow</u> Court found negligence and breach of warranties not to be preempted. Claims that do not challenge the labeling of the defendant's product are not preempted. Simply put, "[i]f a plaintiff can establish a violation of FIFRA which is not predicated on failure to warn or inadequate labeling that claim is actionable." <u>Gougler</u> at 758."

Plaintiff's claim for negligence states "Defendant had a duty to exercise reasonable care in the research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of its Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product. Complaint, para. 104; <u>see</u> paras. 103-116. Not only does binding precedent state that negligence is not preempted, but Plaintiff's negligence claim is NOT predicated upon Defendant's labeling.

Likewise, Plaintiff's claim for breach of implied warranty asserts that Defendant's breach of implied warranty to its consumers by putting its products into the market that were not of merchantable quality or safe for the use in which they were intended. <u>Id.</u>, para. 119. See paras. 118-131.

Furthermore, there is still a real debate between health, cancer and governmental organizations and the EPA as to the safeness of glyphosate, which is

a question of material fact not a question of law.  Accordingly, Defendant's Motion must be denied.

II.      The Impossibility Preemption is Inapplicable

Defendant's final argument that Plaintiff's claims are barred under the impossibility preemption because it is impossible to simultaneously comply with both federal and state law requirements is simply a "hail Mary".

The first part of Defendant's argument rests upon the factual notion that the EPA's reports are correct and incapable of contradiction.  As aforementioned, The EPA's reports are riddled with holes, fraud and indecisiveness, not to mention testing was funded by Defendant and therefore highly criticized.  None of the cases cited above have determined that a defendant was required to simultaneously follow contradicting state and federal laws; not once did the theory of impossibility arise.  Nor has *this* Defendant shown the Court how/what state and federal laws contradict that it would simultaneously need to abide.

The second part of Defendant's impossibility argument is equally as lackluster.  Defendant claims that it cannot "alter" Roundup®'s labels.  Nothing in Plaintiff's Complaint rests solely upon Defendant's labeling or altering its labeling. Again, Defendant does not show how/where *this* Plaintiff has requested a label change or predicated its claims upon a label change.

15

## CONCLUSION

Because this Court must accept as true all material facts alleged in the Plaintiff's Complaint, and view those facts in the light most favorable to the Plaintiff, Defendant's Motion for Judgment on the Pleadings must be denied.

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings must be denied.

This 14th day of February, 2020.

/s/ Ashleigh R. Madison
Ashleigh R. Madison
Georgia Bar No. 346027

Southeast Law, LLC
426 Barnard Street
Savannah, Georgia 31401
912.662.6612

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing upon all parties of record, via the CM/ECF filing system to:

Michael J. Thomas
Pennington, P.A.
215 S. Monroe Street, Suite 200
Tallahassee, Florida 32301
(850) 222-3533 (t)
(850) 222-2126
mike@penningtonlaw.com

Martin C. Calhoun
Hollingsworth, LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800 (t)
mcalhoun@hollingsworthllp.com

Respectfully submitted, this 14th day of February, 2020.

/s/ Ashleigh R. Madison
Ashleigh Madison
Georgia Bar No. 346027

Southeast Law, LLC
2107 Bull Street
Savannah, Georgia 31401
Phone: 912.662.6612