IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JOHN D. CARSON, SR.,

    Plaintiff,

v.

MONSANTO COMPANY,

    Defendant.

CIVIL ACTION NO.: 4:17-cv-237

## O R D E R

Presently before the Court is Defendant Monsanto Company's ("Monsanto") Motion for Judgment on the Pleadings, (doc. 37). Plaintiff John D. Carson, Sr. filed this suit asserting several claims based on his exposure to Monsanto's product, Roundup®, which he alleges caused his malignant fibrous histiocytoma diagnosis. (Doc. 1.) Monsanto then filed the at-issue Motion for Judgment on the Pleadings, (doc. 37), to which Carson filed a Response, (doc. 42), and Monsanto thereafter filed a Reply, (doc. 44). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Monsanto's Motion for Judgment on the Pleadings, (doc. 37). Specifically, the Court **DISMISSES** Counts II and IV against Monsanto Company in their entirety and Counts I and III to the extent those claims are based on the labeling or packaging of Roundup®. (See doc. 1.) The remainder of Counts I and III will stand.[1]

---

[1] Monsanto also filed a motion requesting oral argument on its Motion for Judgment on the Pleadings. (Doc. 38.) In light of the COVID-19 pandemic, Monsanto subsequently filed an Amended Motion stating that it was "amenable to a telephonic hearing" or "to the Court deciding the motion on the papers, without oral argument." (Doc. 45, p. 1.) As there is ample material in the record to rule on Monsanto's Motion for Judgment on the Pleadings, there is no need for a hearing. Accordingly, the Court **DENIES** Monsanto's Motion for Hearing, (doc. 38).

**BACKGROUND**

According to the Complaint, Monsanto is a corporation that, among other things, designed and developed the product Roundup®, which it now markets and sells. (Doc. 1, pp. 3, 16.) Roundup® is Monsanto's brand name for its glyphosate-based herbicide. (Id. at p. 3.) Glyphosate kills plants by preventing them from forming aromatic amino acids, which are necessary for protein synthesis. (Id. at p. 2.)

According to the Complaint, federal law requires that all pesticides be registered with the Environmental Protection Agency ("EPA"). (Id. at pp. 3–4.) Plaintiff alleges that, in 1985, the EPA classified glyphosate as "possibly carcinogenic to humans" and then upon pressure by Monsanto changed the classification to "evidence of non-carcinogenicity in humans." (Id. at p. 5.) Plaintiff further asserts that Monsanto "championed falsified data and attacked legitimate studies that revealed [Roundup®'s] danger" and "led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup® was safe." (Id. at p. 3.) In addition, he alleges that when Monsanto sold Roundup®, "there was a practical, technically feasible and safer alternative design." (Id. at p. 19.)

In March 2015, the International Agency for Research on Cancer ("IARC") reevaluated glyphosate and reported that it is "probably carcinogenic in humans." (Id. at p. 11.) A few years later, on August 7, 2019, the EPA issued a letter "concerning label and labeling requirements for products that contain glyphosate."[2] (Doc. 37-2, p. 2.) In the letter, the EPA stated that it "disagrees

---

[2] Monsanto attached the EPA's letter to its Motion for Judgment on the Pleadings. (Doc. 37-2.) In considering such a motion, the Court can consider "the substance of the pleadings and any judicially noticed facts." Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1232–33 (11th Cir. 2005). Here, the at-issue facts are not part of the pleadings, but they are contained in a letter drafted by a federal agency and, "[a]bsent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports." Terrebonne v. Blackburn, 646 F.2d 997, 1000 n.4 (5th Cir. 1981); see also Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting the decisions of the United States Court

with IARC's assessment of glyphosate." (Id.) The agency based this on its "independent evaluation of available data" and "concluded that glyphosate is 'not likely to be carcinogenic to humans.'" (Id.) Finally, the EPA referenced a California law which would require glyphosate products to provide cancer warnings, stating that such law would result in labels that have a "false and misleading statement." (Id.) As such, the EPA said it "will no longer approve labeling that includes [California's] warning statement for glyphosate-containing products" as those labels would be "misbranded." (Id. at p. 3.)

Plaintiff began applying Roundup® to his lawn approximately thirty years ago and used the product "routinely" until 2016. (Doc. 1, p. 16.) He has since been diagnosed with malignant fibrous histiocytoma. (Id.) On December 5, 2015, Plaintiff filed this suit against Monsanto asserting claims for strict liability for design defect (Count I),[3] strict liability for failure to warn (Count II), negligence (Count III), and breach of the implied warranty of merchantability (Count IV).[4] (Id. at pp. 16–32.) Monsanto filed a Motion for Judgment on the Pleadings. (Doc. 37.) Plaintiff filed a Response, (doc. 42.), and Monsanto filed a Reply, (doc. 44).

---

of Appeals for the Fifth Circuit decided prior to September 30, 1981, as binding precedent of the Eleventh Circuit). Accordingly, the Court takes judicial notice of the information that the EPA reported in its letter.

[3] In his Complaint, Plaintiff refers to his claims as causes of action. For ease of reference, the Court will refer to these claims as "counts."

[4] Plaintiff's Complaint specifically states, in Count IV, that it is asserting a claim for "Breach of Implied Warranties." (Doc. 1, p. 29.) Under Georgia law, there are two types of implied warranties: Merchantability and Fitness for Particular Purpose. See O.C.G.A. §§ 11-2-314 to -315. An implied warranty of merchantability arises where the seller is a merchant with respect to the at-issue goods, and it assures, among other things, that the goods "[a]re fit for the ordinary purposes for which such goods are used." O.C.G.A. § 11-2-314. An implied warranty that goods are fit for a particular purpose, on the other hand, arises where "the seller at the time of contracting has reason to know [the] particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods" for that purpose. O.C.G.A. § 11-2-315. Within Count IV, Plaintiff's Complaint states that "Defendant impliedly warranted to its consumers . . . that its Roundup® products were of merchantable quality and safe for the use for which they were intended." (Doc. 1, p. 30.) As the Complaint does not assert that Plaintiff used Roundup® for anything other than its intended purpose, Plaintiff has not pled sufficient facts to state a claim for breach of implied warranty of fitness for a particular purpose. As

**LEGAL STANDARD**

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." Carbone v. Cable News Network, Inc., 910 F.3d 1345, 1350 (11th Cir. 2018). Under this standard, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)). A complaint must state a facially plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678 (internal quotations omitted).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id. (internal citation omitted). In addition, when a dispositive issue of law allows for no construction of the complaint's allegation to support the cause of action, dismissal is appropriate. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

---

such, the Court will treat Plaintiff's "Breach of Implied Warranties" claim as a claim for the breach of the implied warranty of merchantability.

4

**DISCUSSION**

In his Complaint, Plaintiff asserts claims against Monsanto for strict liability for design defect, strict liability for failure to warn, negligence, and breach of the implied warranty of merchantability. (Doc. 1, pp. 16–32.) Monsanto argues that these claims should be dismissed because the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") expressly preempts them. (Doc. 37, pp. 14–20.) Monsanto also argues that Plaintiff's claims are impliedly preempted because it would be impossible for Monsanto to comply with both federal law and its obligations under state law. (Id. at pp. 21–24.) Finally, Monsanto asserts that Plaintiff alleged insufficient facts to adequately plead his strict liability for design defect claim. (Id. at p. 16 n.7.) In response, Plaintiff argues that neither preemption doctrine applies because his claims do not deal with Roundup®'s labels or packaging, which is what FIFRA regulates. (Doc. 42, pp. 12–15.) The Court will address each argument in turn.

**I.   Choice of Law**

In this diversity action, the Court must apply the choice-of-law rules of its forum state of Georgia to determine which state's substantive laws apply. Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998). Here, Plaintiff's design defect, failure to warn, and negligence claims sound in tort. "Georgia continues to apply the traditional choice of law principles of *lex loci delicti* . . . ." nVision Global Tech. Sols., Inc. v. Cardinal Health 5, LLC, 887 F. Supp. 2d 1240, 1271 (N.D. Ga. 2012) (internal quotations and citation omitted). "[T]he rule of *lex loci delicti* . . . requires application of the substantive law of the place where the tort or wrong occurred." Carroll Fulmer Logistics Corp. v. Hines, 710 S.E.2d 888, 890 (Ga. Ct. App. 2011), *overruled on other grounds by* Auld v. Forbes, 848 S.E.2d 876 (Ga. 2020). The parties do not

dispute that the events giving rise to this action took place in the state of Georgia. Thus, Plaintiff's tort claims are governed by Georgia law.

Plaintiff's other claim, breach of implied warranty of merchantability, sounds in contract. See Chaffin v. Atlanta Coca Cola Bottling Co., 194 S.E.2d 513, 515 (Ga. Ct. App. 1972) ("Under the Uniform Commercial Code a warranty 'that the goods shall be merchantable is implied in a contract for their sale . . .'"). "[I]n contract cases, [Georgia] follows the traditional doctrine of *lex loci contractus:* contracts are 'governed as to their nature, validity and interpretation by the law of the place where they were made' unless the contract is to be performed in a state other than that in which it was made." Boardman Petroleum, Inc., 135 F.3d at 752 (quoting Gen. Tel. Co. of Se. v. Trimm, 311 S.E.2d 460, 461 (Ga. 1984)). Here, the pleadings are not clear as to where Plaintiff purchased Roundup®. However, the Complaint does say that Plaintiff is a resident of Georgia, that Monsanto sold Roundup® throughout Georgia, and that Plaintiff used the Roundup® on his lawn for many years. (Doc. 1, pp 1–2, 16.) Thus, for the purposes of this Motion, the Court finds that Georgia law applies. [5]

## II.     Express Preemption

Monsanto argues that FIFRA expressly preempts Plaintiff's claims because the duties that must apply in order for Plaintiff to succeed on his state law claims would be in direct violation of FIFRA's text. (Doc. 37, pp. 14–20.) "FIFRA is [a] comprehensive regulatory statute that covers, among other things, the use, sale, and labeling of pesticides." Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 488 (3d Cir. 2006). "FIFRA requires a manufacturer seeking to register a pesticide to submit a proposed label to the EPA along with supporting data." Id. (citing 7 U.S.C.

---

[5] Moreover, because the parties have only argued Georgia law and have not offered the substantive law of any other state, Georgia law applies. See Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("[B]ecause the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum . . . controls.") (citation omitted).

6

§ 136a(c)(1)(C), (F)).  The EPA will only approve the label if it finds, among other things, that the product "will perform its intended function without unreasonable adverse effects on the environment."  7 U.S.C. § 136a(c)(5)(C).  Finally, FIFRA contains a provision preventing states from "impos[ing] or continu[ing] in effect any requirements for labeling or packaging in addition to or different from those required" by FIFRA.  7 U.S.C. § 136v(b).

In Bates v. Dow Agrosciences LLC, the Supreme Court addressed for the first time whether FIFRA "pre-empts tort and other common-law claims arising under state law."  Bates v. Dow Agrosciences LLC, 544 U.S. 431, 440 (2005).  The Supreme Court held that a state law or rule must meet two criteria to be preempted by FIFRA.  Id. at 444.  "First, it must be a requirement 'for labeling or packaging,'" and "[s]econd, it must impose a labeling or packaging requirement that is 'in addition to or different from those required under this subchapter.'"  Id.  The Court thus turns to whether Plaintiff's four claims meet both of these requirements.

Plaintiff's failure to warn claim asserts that Monsanto failed "to provide adequate warnings or other clinically relevant information and data regarding . . . the risks associated with" Roundup®.  (Doc. 1, p. 24.)  This most definitely is a requirement for labeling and packaging.  See Bates, 544 U.S. at 446 ("[N]egligent-failure-to-warn claims are premised on common-law rules that qualify as 'requirements for labeling or packaging.'").  The Court must next examine whether this labeling or packaging duty imposed under Georgia law is in addition to or different from the requirement under FIFRA.  Under Georgia law, "the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. 1994).  Here, Plaintiff's Complaint alleges that Monsanto failed to warn about "[t]he dangerous propensities of its products and the carcinogenic characteristics of glyphosate."  (Doc. 1, p. 22.)  However, a warning on Roundup® that glyphosate

7

causes cancer would be in direct conflict with the EPA's approved label because the EPA classifies glyphosate as "not likely to be carcinogenic to humans" and considers glyphosate products with cancer warnings to be "misbranded." (Doc. 37-2, pp. 1–2.) Thus, success for Plaintiff under Georgia's failure to warn tort would require the imposition of a duty upon Monsanto that is different―and in direct conflict―with the requirements set up under the FIFRA statutory scheme. Accordingly, Plaintiff's failure to warn claim is preempted by FIFRA.

Next, the Court turns to Plaintiff's design defect and negligence claims. Plaintiff's design defect claim asserts, *inter alia*, that Monsanto's "Roundup® products were manufactured [and] designed . . . in an unsafe, defective, and inherently dangerous manner." (Doc. 1, p. 17). Likewise, Plaintiff's negligence claim alleges, *inter alia*, that Monsanto "failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sales, and distribution of its Roundup® products." (Id. at p. 26.) The Supreme Court has made clear that not all "common-law rules . . . satisfy the first condition" (of being a requirement "for labeling or packaging"). Bates, 544 U.S. at 444. The Court explicitly held that "[r]ules that require manufacturers to design reasonably safe products [or] to use due care in conducting appropriate testing of their products . . . do not qualify as requirements for 'labeling or packaging.'" Id. Accordingly, the majority of the assertions in Plaintiff's design defect and negligence claims are not explicitly preempted by FIFRA. See Gougler v. Sirius Prods., Inc., 370 F. Supp. 2d 1185, 1194 (S.D. Ala. 2005) ("[I]n the FIFRA context, federal courts routinely distinguish between state-law claims based on failure to warn (which are preempted) and those based on design defects or manufacturing flaws (which are not).").

However, Plaintiff's design defect claim also asserts that Monsanto's "Roundup® products were . . . labeled in an unsafe, defective, and inherently dangerous manner[,]" (doc. 1, p. 17), and

8

his negligence claim alleges that Monsanto "[d]eclin[ed] to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate" (id., p. 28). These claims clearly do touch upon labeling requirements. Accordingly, these claims are preempted if they would impose a labeling requirement that is new or different from the requirements of FIFRA. As previously explained, the EPA considers any glyphosate product with a cancer warning to be misbranded. Thus, as with Plaintiff's failure to warn claim, if these claims were successful, they would foist a duty upon Monsanto to label Roundup® in direct violation of FIFRA. For these reasons, Counts I and III are preempted to the extent those claims are based on the labeling and packaging of Roundup® .

Finally, the Court turns to Plaintiff's breach of implied warranty of merchantability claim. Plaintiff's Complaint states that "Defendant impliedly warranted to its consumers . . . that its Roundup® products were of merchantable quality and safe for the use for which they were intended." (Doc. 1, p. 30.) In Bates, the Supreme Court found that an express warranty was not preempted by FIFRA because "a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product." See Bates, 544 U.S. at 444. However, in Papas v. Upjohn Co., the United States Court of Appeals for the Eleventh Circuit distinguished between express warranties and implied warranties for FIFRA preemption purposes. Papas v. Upjohn Co., 985 F.2d 516, 519 (11th Cir. 1993) (per curiam). In that case, the plaintiff brought, among other things, a claim for breach of the implied warranty of merchantability under Florida law against a pesticide manufacturer. Id. at 517. The Court first noted that "Florida has codified the implied warranty of merchantability, which . . . includes the statutory requirement that goods 'are adequately contained,

packaged, and labeled as the agreement may require.'" Papas, 985 F.2d at 519 (quoting Fla. Stat. Ann. § 672.314(2)(e)). From this, the Eleventh Circuit reasoned that, "[a]lthough liability for breach of an *express* warranty may be viewed as imposed by the warrantor, liability for breach of an *implied* warranty is based on the agreement, *imposed by law*, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended." Id. at 519–20 (internal citations and quotations omitted). Because of this, the Court held that "an implied warranty is a requirement imposed under state law and is pre-empted by FIFRA." Id. at 519.

Georgia, like Florida, has codified the implied warranty of merchantability, and its language regarding labels exactly mirrors the Florida statute. Compare O.C.G.A. § 11-2-314(2)(e) ("Goods to be merchantable must be at least such as [a]re adequately contained, packaged, and labeled as the agreement may require."), with Fla. Stat. Ann. § 672.314(2)(e) ("Goods to be merchantable must be at least such as [a]re adequately contained, packaged, and labeled as the agreement may require."). There can be no doubt then that the Georgia law, like the Florida law, is a labeling and packaging requirement. Thus, applying the reasoning from Papas, the Court finds that Plaintiff's implied breach of warrantability claim is explicitly preempted by FIFRA.

Accordingly, the Court **DISMISSES** Plaintiff's failure to warn claim (Count II) and his claim for breach of the implied warranty of merchantability (Count IV). The Court also **DISMISSES** Plaintiff's design defect claim (Count I) and his negligence claim (Count II) to the extent those claims are based on the labeling or packaging of Roundup®.

### III. Implied Preemption

Monsanto also argues that, if Plaintiff's claims are not explicitly preempted, then the claims should be barred under a form of implied preemption called "impossibility preemption." (Doc. 37, pp. 21–24.) Plaintiff argues that impossibility preemption does not bar his claims that are

unrelated to labeling.  (Doc. 42, p. 15.)  For the following reasons, the Court finds that Plaintiff's remaining claims are not preempted under this doctrine.

"The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'"  Mut. Pharm. Co. v. Bartlett, 570 U.S. 472, 479 (2013) (alterations in the original) (quoting U.S. Const., art. VI, cl. 2).  "Accordingly, it has long been settled that state laws that conflict with federal law are 'without effect.'"  Id. at 479–80 (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)).  "Even in the absence of an express pre-emption provision, the Court has found state law to be impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements.'"  Id. at 480 (quoting English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990)).  However, "[i]mpossibility pre-emption is a demanding defense."  Wyeth v. Levine, 555 U.S. 555, 573 (2009).

As an initial matter, there is considerable support showing that the Bates Court itself rejected impossibility preemption in the context of FIFRA.  See, e.g., In re Roundup Prods. Liab. Litig., 364 F. Supp. 3d 1085, 1088 (N.D. Cal. 2019) ("To begin, Monsanto's implied preemption theory is difficult—if not impossible—to square with [Bates].").  As one district court succinctly explained,

> Prior to Bates, the Supreme Court had already clarified in Geier v. American Honda Motor Co., 529 U.S. 861, 869–70 (2000), that even though a state law is not within the domain expressly preempted, the state law may be preempted if it frustrates the purpose of the federal law or makes compliance with both federal and state law impossible.  The Bates Court thus had to consider any arguments that the claims were impliedly preempted because such arguments, if persuasive, would have necessarily led to an affirmance of the decision on appeal.  The [Bates] Court's reversal of the court of appeals in the face of Dow's implied conflict preemption arguments in support of affirmance thus indicates that the Court implicitly rejected Dow's contentions.

11

Ansagay v. Dow Agrosciences LLC, 153 F. Supp. 3d 1270, 1282 (D. Haw. 2015). Further support can be found in Justice Thomas's concurrence in part in Bates, where he commended the majority for "comport[ing] with this Court's increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption." Bates, 544 U.S. at 459 (Thomas, J., concurring in part and dissenting in part).

However, even if Bates does not foreclose Monsanto's impossibility preemption argument, the argument still fails on the merits. To support its contention that Plaintiff's design defect and negligence claims are barred under impossibility preemption, Monsanto cites Mutual Pharmaceutical Co. v. Bartlett. (Doc. 44, p. 15 (citing Bartlett, 570 U.S. at 475–76).) In that case, the plaintiff brought a design defect claim against a drug manufacturer for damages caused by a generic drug produced by that manufacturer. Bartlett, 570 U.S. at 475. The Court found that the plaintiff's claim was preempted because the manufacturer could not change the active ingredients of the drug or strengthen its warning label under the Federal Food, Drug, and Cosmetic Act ("FDCA"). Id. at 483–87. The Supreme Court rejected the Court of Appeals for the First Circuit's reasoning that the drug manufacturer "could escape the impossibility of complying with both its federal- and state-law duties by choos[ing] not to make [the drug] at all" because such "'stop-selling' rationale [was] incompatible with . . . pre-emption jurisprudence." Id. at 488 (first alteration in the original) (internal quotations and citation omitted).

Importantly, the Supreme Court's decision in Bartlett pertained to the FDCA and not FIFRA. The Supreme Court has explained that "different federal statutes and regulations may . . . lead to different pre-emption results." PLIVA, Inc. v. Mensing, 564 U.S. 604, 626 (2011). FIFRA gives state agencies certain powers that the FDCA does not; relevant here, FIFRA allows state agencies to ban the sale of a pesticide under certain circumstances. Bates, 544 U.S. at 446

(citing 7 U.S.C.A. § 136v(a)). Since FIFRA gives states the authority to ban pesticides outright, it follows that states could choose to require manufacturers to get EPA approval of alternative, safer product designs. See, e.g., In re Roundup Prods. Liab. Litig., 364 F. Supp. 3d at 1088 ("[I]f California can stop Monsanto from selling Roundup entirely, surely it can impose state-law duties that might require Monsanto to seek EPA approval before selling an altered version of Roundup in California."); Crespo v. S.C. Johnson & Son, Inc., 394 F. Supp. 3d 260, 274 (E.D.N.Y. 2019) ("[T]he language in § 136v(a) sets FIFRA apart from other federal statutory schemes which do not contemplate FIFRA's level of state participation in regulating products within a federal statute's purview.") (internal quotation and citation omitted). Thus, FIFRA's statutory scheme is too dissimilar from that of the FDCA for FDCA cases such as Mutual Pharmaceutical Co. v. Bartlett to be used to determine implied preemption in the context of FIFRA. In addition, Monsanto does not cite any cases, let alone a case from the Eleventh Circuit, where a court has applied the implied preemption analysis from an FDCA case to FIFRA.[6] Accordingly, the Court declines to hold that any of Plaintiff's remaining claims are impliedly preempted because of impossibility.

## IV.     Failure to State a Claim

In a footnote of its Brief, Monsanto presses an alternative argument that Plaintiff's strict liability claim for design defect fails because it is inadequately pled. (Doc. 37, p. 16 n.7.) Plaintiff does not respond to this argument. Under Georgia law, "a design defect case does not allege that the product in question was uniquely defective, but instead calls into question an entire product

---

[6] Monsanto relies most on the United States Court of Appeals for the Sixth Circuit's decision in Yates v. Ortho-McNeil-Janssen Pharmaceuticals, Inc. (Doc. 44, pp. 15–16 (citing Yates v. Ortho-McNeil-Janssen Pharms., Inc., 808 F.3d 281 (6th Cir. 2015). Like all of Monsanto's cited cases, this case deals with implied preemption in the context of the FDCA and not FIFRA. In addition, other district courts in the Eleventh Circuit have examined Yates and rejected its reasoning. See Brazil v. Janssen Research & Dev. LLC, 249 F. Supp. 3d 1321, 1347 (N.D. Ga. 2016) ("The Court does not find that the Sixth Circuit's conclusion in Yates is persuasive as it does not demonstrate the impossibility standard for preemption was met.").

13

line." Sheffield v. Conair Corp., 821 S.E.2d 93, 96 (Ga. Ct. App. 2018). "Consequently, a design defect case requires the court to supply the standard for defectiveness." Id. To do this, Georgia Courts have adopted a "risk-utility analysis" which requires the trier of fact to weigh "the risks inherent in a product design . . . against the utility or benefit derived from the product." Dean v. Toyota Indus. Equip. Mfg., Inc., 540 S.E.2d 233, 237 (Ga. Ct. App. 2000). Relevant factors in this inquiry include:

> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance. We note that a manufacturer's proof of compliance with industry-wide practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products.

Banks v. ICI Ams., Inc., 450 S.E.2d 671, 675 n.6 (Ga. 1994).

Monsanto argues that "Plaintiff fails to allege any facts that would enable a comparison of the risks inherent in Roundup®'s design and the product's benefits under Georgia's risk-utility test." (Doc. 37, p. 16 n.7 (internal quotation and citation omitted).) In support of this assertion, Monsanto cites Brown v. Sirchie Acquisition Co., LLC. (Id. (citing Brown v. Sirchie Acquisition Co., LLC, No. 1:16-CV-175-SCJ, 2017 WL 4082690, at *4–5 (N.D. Ga. Feb. 17, 2017)).) In that case, the plaintiff sued the manufacturer of a drug test which had produced a false positive result and led to his arrest. Brown, 2017 WL 4082690, at *1. The Court dismissed the claim because the plaintiff's complaint only alleged that the "drug test kits return false positives" and at no point did the complaint "allege that the dangers of [defendant's] product outweigh its utility." Id. at *4. Here, to the contrary, Plaintiff's Complaint states that "Roundup® products . . . posed a grave risk

of cancer" and that "[e]xposure to Roundup® . . . presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide." (Doc. 1, p. 18.) Thus, the facts here are easily distinguishable from Brown.

In addition, Monsanto argues that Plaintiff's "design defect theory also fails because it seeks to hold Monsanto liable for not developing a completely different, non-glyphosate-based product." (Doc. 37, p. 16 n.7.) Plaintiff's Complaint does assert that Monsanto "could have designed its Roundup® products to make them less dangerous. Indeed, at the time that Defendant designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable." (Doc. 1, p. 19.) However, such pleading is entirely consistent with Georgia law. See Jones v. NordicTrack, Inc., 550 S.E.2d 101, 103 (Ga. 2001) ("The 'heart' of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one."); Banks, 450 S.E.2d at 674 ("One factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design."). Accordingly, the Court finds that Plaintiff's Complaint adequately makes out a design defect claim.[7]

---

[7] In its Reply Brief, Monsanto also argues that Plaintiff's negligence claims should be dismissed for failure to state a claim and cites a Georgia Court of Appeals case which states that "[i]n Georgia, only semantics distinguishes the cause of action for negligence and a cause of action pursuant to [O.C.G.A.] § 51-1-11 (claiming strict liability for defective design)." (Doc. 44, p. 11–12 (quoting Davis v. John Crane, Inc., 836 S.E.2d 577, 583 (Ga. Ct. App. 2019)).) However, the court in Davis was directly quoting Banks, and in the quoted portion of Banks, the Georgia Supreme Court was merely quoting—in a footnote—what the Georgia Court of Appeals had "noted" in its order (which was under review at the time by the Georgia Supreme Court). See Banks, 450 S.E.2d at 674 n.3 ("As noted in the Court of Appeals' opinion . . . ."). Importantly, the Georgia Supreme Court in Banks actually proceeded—within the same footnote—to make clear that it did not "agree that the use of negligence principles to determine whether the design of a product was 'defective' necessarily obliterates under every conceivable factual scenario the distinction Georgia law has long recognized between negligence and strict liability theories of liability." Id. Ultimately, the state supreme court found "no reason to conclude definitively that the two theories merge in design defect cases." Id. Thus, even if Monsanto had shown that Plaintiff failed to adequately plead a strict liability design defect claim, this would not mean that Plaintiff's negligence claim would automatically fail as well.

**CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Monsanto Company's Motion for Judgment on the Pleadings. (Doc. 37.) The Court **DISMISSES** Counts II and IV against Monsanto Company in their entirety and Counts I and III to the extent those claims are based on the labeling or packaging of Roundup®. (Doc. 1.) The remainder of Counts I and III will stand. The Court also **DENIES** Monsanto Company's Motions for Hearing. (Docs. 38, 45.) Finally, the Court **LIFTS** the stay on this case, (doc. 47), and **ORDERS** the parties to conduct a Rule 26(f) conference within twenty-one (21) days from the filing of this Order and to file a Rule 26(f) Report within seven (7) days from the Rule 26(f) conference.[8] Failure to comply with these directives may result in the dismissal of this action or striking of the answer.

**SO ORDERED**, this 21st day of December, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[8] The Rule 26(f) Report shall conform to the language and format of Judge Baker's Rule 26(f) Report Form located on the Court's website www.gasd.uscourts.gov under "Forms" and "Judge Baker- Instructions and Forms."